THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ANGEL CHRISTOPHER ABREU,<br><br>        Plaintiff,<br><br>v.<br><br>WEBER CNTY. SHERIFF'S OFFICE et al.,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER TO CURE DEFICIENT COMPLAINT**<br><br>Case No. 2:25-cv-00348-JNP<br><br>Chief District Judge Jill N. Parrish |

Plaintiff Angel Christopher Abreu, acting *pro se* as a pretrial detainee, brought this civil-rights action. *See* 42 U.S.C.S. § 1983 (2025).[1] Having now screened the Complaint, ECF No. 1, under its statutory review function, 28 U.S.C.S. § 1915A (2025),[2] the Court orders Plaintiff to file an amended complaint curing deficiencies if he would like to further pursue claims.

---

[1] The federal statute creating a "civil action for deprivation of rights" reads, in pertinent part:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any **State** or **Territory** . . ., subjects, or **causes** to be subjected, any citizen of the United **States** or other **person** within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C.S. § 1983 (2025).

[2] The screening statute reads:

> (a) Screening.—The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

## A. COMPLAINT'S DEFICIENCIES

The Complaint:

**1.** is not on the Court-required form.

**2.** is not clear as to whether Plaintiff understands the difference between suing defendants in their individual or official capacities. (See below.)

**3.** does not adequately specify factual allegations meeting the elements of municipal liability under which an attacked policy could be held unconstitutional. (See below.)

**4.** improperly names Weber County Sheriff's Office and Inmate Management Committee as § 1983 defendants, when they are not independent legal entities that can sue or be sued. (See below.)

**5.** improperly alleges civil rights violations on a *respondeat superior* theory. (See below.)

**6.** does not concisely link *each element* of claims of excessive force to separate individually named defendant(s). (See below.)

**7.** does not concisely link *each element* of claims of medical and physical mistreatment to separate individually named defendant(s). (See below.)

**8.** raises issues of classification change/programming and administrative segregation in way that does not necessarily support a cause of action. (See below.)

**9.** generally does not properly affirmatively link an individual named defendant to each element of each alleged civil rights violation. (See below.)

**10.** does not adequately link *each element* of a retaliation claim to specific, named defendant(s). (See below.)

---

(b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
    (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.
28 U.S.C.S. § 1915A (2025).

**11**. needs clarification on an unnecessary-rigor claim under the Utah Constitution.[3] (See below.)

**12**. needs clarification on his potential negligence claim, which would be brought under Utah law. *See Tesch for T.T. v. Bonneville Prop. Inv., LLC*, 2025 UT 58, at ¶ 19 ("To prevail on a negligence claim, a plaintiff must establish four elements: duty of care, breach of duty, legal causation, and damages.").

**13**. does not adequately link *each element* of a due-process claim to specific named defendant(s). *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." (cleaned up)).

**14**. possibly inappropriately alleges civil rights violations on the basis of denied grievances. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

**15**. possibly inappropriately alleges a constitutional right to a grievance process. *See Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished) ("[T]here is no independent constitutional right to state administrative grievance procedures. Nor does the state's voluntary provision of administrative grievance process create a liberty interest in that process."); *Dixon v. Bishop*, No. CV TDC-19-740, 2020 U.S. Dist. LEXIS 41678, at *20 (D. Md. Mar. 11, 2020) ("[P]risons do not create a liberty interest protected by the Due Process Clause when they adopt administrative mechanisms for hearing and deciding inmate complaints[;] any failure to abide by the administrative remedy procedure or to process [grievances] in a certain way does not create a constitutional claim.").

**16**. appears to allege "random and unauthorized deprivation of property under color of state law," without acknowledging that such a claim "does not give rise to a § 1983 claim if there is an adequate state post-deprivation remedy." *Frazier v Flores*, 571 F. App'x 673, 675–677 (10th Cir. 2014) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).

**17**. does not adequately link *each element* of a legal-access claim to specific named defendants. (See below.)

---

[3] Plaintiff should keep in mind that, if he brings state-law claims, the Court could take jurisdiction over the claim only as a matter of "pendent jurisdiction," a doctrine that allows "district courts to hear [state-law] claims that form 'part of the same case or controversy' as the claims on which original federal jurisdiction is based." *Estate of Harshman v. Jackson Hole Mt. Resort Corp.*, 379 F.3d 1161, 1164 (10th Cir. 2004). Thus, if all Plaintiff's "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

**18.** has claims possibly based on current confinement; however, the complaint apparently was not submitted using legal help that Plaintiff is constitutionally entitled to by his institution. *See Lewis v. Casey*, 518 U.S. 343, 356 (1996) (requiring prisoners be given "'*adequate* law libraries or *adequate* assistance from persons trained in the law' . . . to ensure that inmates . . . have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement") (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (emphasis added)).

## B. GUIDANCE FOR PLAINTIFF

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "(1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Rule 8's requirements mean to guarantee "that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." *TV Commc'ns Network, Inc. v ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991).

Pro se litigants are not excused from meeting these minimal pleading demands. "This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, it is improper for the Court "to assume the role of advocate for a pro se litigant." *Id.* Thus, the Court cannot "supply additional facts, [or] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

Plaintiff should consider these points before filing an amended complaint:

**1.** The revised complaint must stand entirely on its own and shall not refer to, or incorporate by reference, any part of the original complaint(s). *See Murray v. Archambo*, 132 F.3d 609, 612

(10th Cir. 1998) (stating an amended complaint supersedes the original). Also, an amended complaint may not be added to after filing without moving for amendment. Fed. R. Civ. P. 15.

**2.** Each defendant must be named in the complaint's caption, listed in the section of the complaint setting forth names of each defendant, and affirmatively linked to applicable claims within the "cause of action" section of the complaint.

**3.** The complaint must clearly state what each individual defendant—typically, a named government employee—did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) (stating personal participation of each named defendant is an essential allegation in a civil rights action). "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 F. App'x 757, 759 (10th Cir. 2009) (unpublished) (cleaned up). Plaintiff should also include, as much as possible, specific dates or at least estimates of when alleged constitutional violations occurred.

**4.** Each cause of action, together with the facts and citations that directly support it, should be stated separately. Plaintiff should be as brief as possible while still using enough words to fully explain the "who," "what," "where," "when," and "why" of each claim. *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("The [*Bell Atlantic Corp. v.*] *Twombly* Court was particularly critical of complaints that 'mentioned no specific, time, place, or person involved in the alleged [claim].' [550 U.S. 544, 565] n.10 (2007). Given such a complaint, 'a defendant seeking to respond to plaintiff's conclusory allegations . . . would have little idea where to begin.' *Id.*").

**5.** Plaintiff may not name an individual as a § 1983 defendant based solely on supervisory position. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).

**6.** Grievance denial alone, unconnected to "violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

**7.** "No action shall be brought with respect to prison conditions under . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.S. § 1997e(a) (2025). However, Plaintiff need not include grievance details in the complaint. Exhaustion of administrative remedies is an affirmative defense that must be raised by defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

**8. Official capacity versus individual capacity**. The United States Court of Appeals for the Tenth Circuit explains:

> The Supreme Court has instructed that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (cleaned up). By contrast, individual-capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

*Coates v. Reigenborn*, Nos. 22-1339 & 22-1434, 2023 U.S. App. LEXIS 27456, at *9–10 (10th Cir. Oct. 16, 2023) (unpublished); *see also Mocek v. City of Albuquerque*, 813 F.3d 912, 932 (10th Cir. 2015) ("A suit against a government agent in his official capacity is treated as a suit against the government.").

One difference between suing a defendant in an official versus individual capacity has to do with alleging causation. To adequately assert causation against a defendant in an individual capacity, the plaintiff must allege facts showing that the defendant "set in motion a series of events that he knew or reasonably should have known would cause others to deprive [the plaintiff] of her constitutional rights." *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (cleaned up); *see*

*also Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) ("When confronting individual-capacity § 1983 claims, our focus must always be on the *defendant*—on the injury *he* inflicted or caused to be inflicted, and on *his* motives." (cleaned up)). Conversely, to adequately assert causation against a defendant in an official capacity, the plaintiff must first identify an official policy or custom, and then establish that the challenged policy or custom was the "'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Plaintiff should keep in mind too that "it makes no sense to sue a governmental entity in its individual capacity." *Jackson-Mackay v. McDonald*, No. 22-8033, 2023 U.S. App. LEXIS 6356, at *2 (10th Cir. Mar. 17, 2023). And, finally, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell,* local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (referencing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978)).

**9. Municipal liability principles.** Plaintiff should study and incorporate these general principles in reframing any municipal liability claim:

> In addition to a constitutional violation, a plaintiff must satisfy three elements to succeed on a *Monell* claim: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." [*Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023)].

> An official policy or custom may include:

>> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the

> decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions--and the basis for them--of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

> *Id.* (quotations omitted). "For causation . . . the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1241 (10th Cir. 2020) (quotations omitted). The policy or custom must be "the moving force behind the injury alleged." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quotations omitted). And "[a] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm [that] will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Burke v. Regalado*, 935 F.3d 960, 997–98 (10th Cir. 2019) (quotations omitted).

*Buchanan v. Turn Key Health Clinics, LLC*, No. 22-7029, 2023 U.S. App. LEXIS 28156, at *18–21 (10th Cir. Oct. 24, 2023) (unpublished).

**10. Governmental sub-units**. "Generally, governmental sub-units are not separate suable entities that may be sued under § 1983." *Hinton v. Dennis*, 362 Fed. App'x 904, 907 (10th Cir. 2010) (finding county criminal justice center not suable entity under § 1983). Indeed, the Tenth Circuit has acknowledged that sheriff's departments and police departments "are not legally suable entities." *Lindsey v. Thomson*, 275 Fed. App'x 744, 747 (10th Cir. 2007); *see also Smith v. Lawton Corr. Facility*, No. CIV-18-110-C, 2018 U.S. Dist. LEXIS 45488, at *5 (W.D. Okla. Mar. 7, 2018) (stating correctional facilities "not suable entities in a § 1983 action").

11. ***Respondeat superior***. The Supreme Court holds that, in asserting a § 1983 claim against a government agent in an individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Consequently, there is no *respondeat superior* liability under § 1983. *See id.* (". . . Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Entities may not be held liable on the sole ground of an employer-employee relationship with a claimed tortfeasor. *See Monell*, 436 U.S. at 691. Supervisors are considered liable for their own unconstitutional or illegal policies only, and not for employees' tortious acts. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998).

12. **Excessive Force**. This is general information on an excessive-force cause of action:

> "An excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." [*Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (cleaned up)]. An official's state of mind is sufficiently culpable "if he uses force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline." *Id.* (cleaned up).

*Lehman v McKinnon*, No. 20-1312, 2021 U.S. App. LEXIS 27250, at *5–6 (10th Cir. Sept. 10, 2021) (unpublished).

13. **Inadequate medical and physical treatment.**[4] The Eighth Amendment's ban on cruel and unusual punishment requires prison officials to "provide humane conditions of confinement"

---

[4] The Tenth Circuit holds that a pretrial detainee's claims as to conditions of confinement are controlled by the Fourteenth Amendment's Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x

including "adequate . . . medical care." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998))

(quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). To state a cognizable claim

under the Eighth Amendment for failure to provide proper medical care or physical treatment, "a

prisoner must allege acts or omissions *sufficiently harmful* to evidence deliberate indifference to

serious medical [and physical] needs." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)

(emphasis in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Any Eighth Amendment claim must be evaluated under objective and subjective prongs:

(1) "Was the deprivation sufficiently serious?" And, if so, (2) "[d]id the officials act with a

sufficiently culpable state of mind?" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Under the objective prong, a medical or physical need is "sufficiently serious . . . if it is

one that has been diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v.

Colorado*, 218 F.3d 1205, 1209 (2000) (cleaned up).

The subjective component requires the plaintiff to show that prison officials were

consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the

risk "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847

(1994). "[T]he 'inadvertent failure to provide adequate medical care' tantamount to negligence

does not satisfy the deliberate indifference standard." *Sparks v. Singh*, 690 F. App'x 598, 604 (10th

Cir. 2017) (unpublished) (quoting *Estelle*, 429 U.S. at 105–06). Furthermore, "a prisoner who

merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional

---

762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.
1998)); *see Hooks v. Atoki*, 983 F.3d 1193, 1203–04 (10th Cir. 2020).

violation." *Perkins v. Kan. Dep't of Corrs.,* 165 F.3d 803, 811 10th Cir. 1999); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.").

14. **Classification and administrative segregation.** An inmate's transfer to different housing (e.g., medical unit) or adjustment of privileges (e.g., attending classes) does not necessarily mean that prison administrators were deliberately indifferent to conditions with substantial risk of serious harm. *See Farmer*, 511 U.S. at 834; *see also Allen v. Raemisch*, 603 F. App'x 682, 684 (10th Cir. 2015) (unpublished) ("[P]risoners do not have a protected liberty or property interest in keeping a specific prison job . . . ."). Nor is it, per se, "'atypical [of] ... the ordinary incidents of prison life.'" *Adams v. Negron*, 94 F. App'x 676, 678 (10th Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (unpublished) (holding placement in highly structured, restrictive prison housing was not deliberate indifference)).

15. **Affirmative Link.**

> [A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. [*Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018)]. Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins*, 519 F.3d at 1250 (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998)) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants—"despite the fact that each of the defendants had different powers and duties and took different

actions with respect to [plaintiff]"—and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

*Estate of Roemer v. Johnson*, 764 F. App'x 784, 790–91 (10th Cir. 2019).

"A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal." *Id*. at 790 n.5. Indeed, the Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous." *Id*.

**16. Retaliation Claim.** To properly assert a retaliation claim, Plaintiff must allege three elements: (1) he was involved in "constitutionally protected activity"; (2) Defendants' behavior injured him in a way that "would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Defendants' injurious behavior was "substantially motivated" as a reaction to his constitutionally protected conduct. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

**17. Unnecessary Rigor.** The following passage gives information on validly stating that a specific defendant's behavior meets the elements of an unnecessary-rigor cause of action:

> Article I, § 9 of the Utah Constitution states in part, "[p]ersons arrested or imprisoned shall not be treated with unnecessary rigor." Although this clause "closely approximates the language of the Eighth Amendment," it has no federal counterpart. *Dexter v. Bosko*, 2008 UT 29, 184 P.3d 592, 595. The Utah Supreme Court has had "few opportunities to interpret or apply the unnecessary rigor." *Id.* Nonetheless, the Utah Supreme Court has held that the unnecessary rigor clause "'protects [prisoners and arrestees] against unnecessary abuse . . . that is 'needlessly harsh, degrading or dehumanizing.'" *Id. at 595* (quoting *Bott v. Deland*, 922 P.2d 732, 737 (Utah 1996)). To state a claim for a violation of the unnecessary rigor clause, the violation "'must arise from 'treatment that is clearly excessive or deficient and unjustified, not merely the frustrations, inconveniences, and irritations that are common to prison life.'" *Id*.

at 597 (quoting *Bott*, 922 P.2d at 741). When the claim of unnecessary rigor arises from an injury, a constitutional violation is made out only when the act complained of presented a substantial risk of serious injury for which there was no reasonable justification at the time. *Id*. (quoting *Bott*, 922 P.2d at 741). The conduct at issue, moreover, "must be more than negligent to be actionable." *Id*.

In addition to these requirements, a plaintiff must also establish three elements to support an unnecessary rigor claim: (1) "A flagrant violation of his or her constitutional rights;" (2) "Existing remedies do not redress his or her injuries;" and, (3) "Equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Id*. at 597–98 (quoting *Spackman v. Bd. of Educ*., 2000 UT 87, 16 P.3d 533, 538–39 (Utah 2000)).
. . . [However, Plaintiff's] § 1983 claims likely serve as existing remedies that redress his injuries[, mooting the need to also bring an unnecessary rigor claim]."

*Asay v. Daggett County*, No. 2:18-CV-422, 2019 U.S. Dist. LEXIS 5794, at *18–20 (D. Utah Jan. 11, 2019).

**18. Legal-access claim.** It is true that prison inmates "have a constitutional right to 'adequate, effective, and meaningful' access to the courts and that the states have 'affirmative obligations' to assure all inmates such access." *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir. 1980). In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court expounded on the obligation to provide legal access by stating "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id*. at 828 (footnote omitted & emphasis added).

However, to successfully assert a constitutional claim for denial of access to courts, a plaintiff must allege not only inadequacy of the library or legal assistance provided but also "that the denial of legal resources hindered [the plaintiff's] efforts to pursue a nonfrivolous claim."

*Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) (emphasis added). In other words, a plaintiff must show that "denial or delay of access to the court prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). Moreover, the non-frivolous litigation involved must be "habeas corpus or civil rights actions regarding current confinement." *Carper v. DeLand*, 54 F.3d 613, 616; *accord Lewis v. Casey*, 518 U.S. 343, 353–55 (1996).

## C. MOTION FOR APPOINTED COUNSEL

Plaintiff also moves for "appointment of counsel." ECF No. 4.

"As a civil litigant, plaintiff has no Sixth Amendment right to counsel." *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006). And the Court lacks authority to appoint counsel; still, federal statute authorizes the Court to ask counsel to agree to represent an indigent plaintiff free of charge.[5] *See* 28 U.S.C.S. § 1915(e)(1) (2025) ("The Court may request an attorney to

---

[5] The Tenth Circuit has noted:

> Each year, the district court receives hundreds of requests for legal representation and only a small number of attorneys are available to accept these requests. Accordingly, the district court must use discretion in deciding which cases warrant a request for counsel. To do otherwise would deprive clearly deserving litigants of an opportunity to obtain legal representation. The dilemma is unfortunate for litigants [denied counsel]. But the dilemma [i]s not the district court's fault; that dilemma [i]s the product of the court's lack of authority to compel legal representation or to reimburse attorneys for their time.

*Rachel v. Troutt*, 820 F.3d 390, 397 n.7 (10th Cir. 2016); *see also Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (stating courts may not "require an unwilling attorney to represent an indigent litigant in a civil case"); *Greene v. U.S. Postal Serv.*, 795 F. App'x 581, 583 (10th Cir. 2019) (unpublished) ("In most legal communities, only a limited number of attorneys are willing to take these cases. Thus, the district court [must] decide how to maximize the benefit from these local resources."); *Gross v. GM LLC*, 441 F. App'x 562, 567 (10th Cir. 2011) (unpublished) (observing courts rarely request counsel to represent parties in civil actions); *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1421 (10th Cir. 1992) (cautioning courts

represent any person unable to afford counsel."); *McCleland v. Raemisch*, No. 20-1390, 2021 U.S. App. LEXIS 29490, at *15 n.3 (10th Cir. Sept. 30, 2021) (unpublished) (explaining, when prisoner-plaintiffs "refer to appointing counsel," they "really refer to a request that an attorney take the case *pro bono*"). Plaintiff has the burden of convincing the Court that Plaintiff's claim has enough merit to warrant such a request of counsel, and he has not yet met it. *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985). Additionally, "[i]t is not enough" for Plaintiff to argue that he needs help "in presenting his strongest possible case, as the same could be said in any case." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (cleaned up).

Instead, in deciding whether to ask volunteer counsel to represent Plaintiff at no cost, this Court considers a variety of factors, like "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (cleaned up). Considering the above factors, the Court concludes here that, at this time, Plaintiff's claims may not be colorable, the issues in this case are not complex, and Plaintiff does not appear to be too incapacitated or unable to adequately function in pursuing this matter. Thus, the Court denies for now Plaintiff's motion for "appointment of counsel." ECF No. 4.

---

that indiscriminately appointing "volunteer counsel to undeserving claims will waste a precious resource and may discourage attorneys from donating their time").

**D. ORDER**

    **IT IS HEREBY ORDERED** as follows:

    **1.** Plaintiff must within sixty days cure the Complaint's deficiencies noted above by filing a document entitled, "Amended Complaint," that does not refer to or include any other document. ECF No. 1.

    **2.** The Clerk's Office shall mail Plaintiff the Pro Se Litigant Guide with a blank-form civil-rights complaint which Plaintiff must use to pursue an amended complaint.

    **3.** If Plaintiff fails to timely cure the above deficiencies according to this Order's instructions, this action will be dismissed without further notice.

    **4.** The amended complaint shall not include any claims outside the dates and allegations of transactions and events contained in the Complaint. The Court will not address any such new claims or outside allegations, which will be dismissed. If Plaintiff wishes to raise other claims and allegations, Plaintiff may do so only in a new complaint in a new case. If an amended complaint is filed, the Court will screen each claim and defendant for dismissal or an order effecting service upon valid defendants who are affirmatively linked to valid claims.

    **5.** Plaintiff must tell the Court of any address change and timely comply with Court orders. *See* D. Utah Civ. R. 83-1.6(b) ("An unrepresented party must immediately notify the Clerk's Office in writing of any name, mailing address, or email address changes."). Failure to do so may result in this action's dismissal for failure to prosecute. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction,

improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.").

    **6.** Extensions of time are disfavored, though reasonable extensions may be granted. Any motion for time extension must be filed no later than **fourteen days** before the deadline to be extended.

    **7.** No direct communication is to take place with any judge. All relevant information, letters, documents, and papers, labeled with case number, are to be directed to the court clerk.

    **8.** Plaintiff must observe this District of Utah local rule: "A party proceeding without an attorney (unrepresented party or *pro se* party) is obligated to comply with: (1) the Federal Rules of Civil Procedure; (2) these Local Rules of Practice; (3) the Utah Standards of Professionalism and Civility; and (4) other laws and rules relevant to the action." DUCivR 83-1.6(a).

    **9.** Plaintiff's motion for "appointment of counsel" is **DENIED**. ECF No. 4. However, if—after the case develops further—it appears that counsel may be needed or of specific help, the Court may ask an attorney to appear *pro bono* on Plaintiff's behalf. The Court will continually reevaluate the need for counsel; thus, no further motions for appointed counsel are needed.


    SIGNED January 15, 2026.

                    BY THE COURT:

                    _____
                    CHIEF JUDGE JILL N. PARRISH
                    United States District Court